IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL MASER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 17-99 |
| | ) Judge Nora Barry Fischer |
| | ) |
| JEREMY DEEBLE and TRANONT, INC., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION**

I. INTRODUCTION

This diversity action arises out of an alleged illegal wiretap. (Docket No. 1-2). Plaintiff asserts claims against Defendants for breach of contract, tortious interference with contract and business relationships, defamation, unfair and deceptive trade practices, intrusion upon seclusion, publicity to private life, and false light. (*Id.*). Presently before the Court is Defendants' Motion to Dismiss for Lack of Jurisdiction or to Transfer the Case, along with a supporting brief. (Docket Nos. 3, 4). Plaintiff filed a brief in opposition to Defendant's motion, to which Defendants replied. (Docket Nos. 7, 12, 13). Along with their briefing, Defendants have also presented affidavits prepared by Defendant Jeremy Deeble and Scott Bland. (Docket Nos. 4-1, 4-2). Upon consideration of the parties' arguments, and for the following reasons, Defendants' Motion to Dismiss for Lack of Jurisdiction is granted, without prejudice to Plaintiff refiling this action in the appropriate jurisdiction.

1

II. FACTUAL BACKGROUND

   a. *Plaintiff's Complaint*

Plaintiff is a native of Allegheny County, Pennsylvania, and is an independent business owner with the American Communications Network ("ACN"). (Docket No. 1-2 at ¶¶ 1, 4-5). Defendant Deeble is a resident of Indiana,[1] and Defendant Tranont, Inc.'s principal place of business is in Utah. (*Id.* at ¶¶ 2-3). Defendant Deeble was formerly a representative in the downline of ACN but became an agent of Defendant Tranont, Inc., a competitor of ACN. (*Id.* at ¶¶ 17, 22). Plaintiff alleges that Defendants conspired and designed a plan to bait him into embarrassing himself, to publish the damaging results, and to recruit individuals from ACN to join Defendant Tranont, Inc. (*Id.* at ¶¶ 24, 26). Specifically, Plaintiff avers that Defendants "inspired" to illegally intercept and record an embarrassing telephone conversation, in which Plaintiff appears angry, profane, and loud, and then distributed the conversation through text messages, e-mails, and social media for the purpose of damaging Plaintiff's business relationships. (*Id.* at ¶¶ 28, 30-34, 39-40). Plaintiff states that his counsel has requested confirmation that the publication has ceased but has not received a response from Defendants. (*Id.* at ¶¶ 37-38). Plaintiff alleges that his reputation among his downline representatives and business associates has been damaged, and will continue to be damaged by Defendants' further publication of the recorded telephone call. (*Id.* at ¶¶ 41-43).

Plaintiff asserts claims against Defendants for breach of contract, tortious interference with contract and business relationships, defamation, unfair and deceptive trade practices, intrusion upon seclusion, publicity to private life, and false light. (*Id.* at ¶¶ 44-88). In support of his breach of contract claim, Plaintiff contends that Defendant Deeble breached the parties' ACN

---

[1] As noted below, Defendant Deeble states that he is a resident of Idaho, not Indiana.

contract, which included a covenant not to compete. (*Id.* at ¶¶ 44-48). Regarding his claim for tortious interference with contract and business relationships, Plaintiff alleges that Defendants tortiously interfered with his business associates and customers by publishing the illegally recorded telephone call and poaching his current and potential future independent business owners in his ACN downline. (*Id.* at ¶¶ 49-54). Plaintiff relies upon the same core facts to support his claims for defamation, unfair and deceptive trade practices, intrusion upon seclusion, publicity to private life, and false light. (*Id.* at ¶¶ 55-87). He seeks injunctive and compensatory relief. (*Id.* at ¶¶ 88-99).

### b. *Plaintiff's Emergency Petition for Injunctive Relief*

Plaintiff filed an Emergency Petition for Injunctive Relief in the Court of Common Pleas of Allegheny County. (Docket No. 1-3 at 2-16). In his petition, Plaintiff restated the facts in his Complaint that detailed his relationship with Defendants and the telephone call. (*Id.* at ¶¶ 1-44). In support of his request for immediate injunctive relief, Plaintiff alleged that Defendants had been luring and poaching his independent business owners, his customers, and his business associates. (*Id.* at ¶ 45). Plaintiff asserted that Defendants would not be prejudiced by ceasing further publication of the call and that he would suffer permanent, substantial, and irreparable harm without an injunction. (*Id.* at ¶¶ 47-48). Plaintiff requested a temporary restraining order prohibiting any further publication of the call, a hearing for a permanent injunction, and judgment for Plaintiff in excess of $200,000 in damages. (*Id.*).

On December 22, 2016, the Court of Common Pleas of Allegheny County issued a special injunction order against Defendants and scheduled a hearing on the construction of the special injunction. (*Id.* at 2, 43). After Defendants failed to appear at the hearing held on

December 28, 2016, the court made its December 22, 2016 order permanent. (*Id.* at 1-2, 45). The court further ordered Defendants to: (1) provide to Plaintiff's counsel any and all originals and copies of the recording, along with reasonable confirmation of the destruction of all copies; (2) cease publication and permanently terminate all publication of the recording; and (3) retract any known recipients and provide a list of the places in which the recording had been published, the persons to whom the recording had been published, and the manner of publication. (*Id.*).

    c. *Defendants' Supporting Evidence*

Attached to their briefing in support of their motion, Defendants have presented affidavits prepared by Scott Bland and Defendant Deeble. In his affidavit, Bland states that he is the President of iMoney Tools, LLC d/b/a Tranont, which is a limited liability company with a primary address located in Utah. (Docket No. 4-1 at ¶ 1). Bland avers that the company's members are National Marketing & Learning, LLC, a Missouri limited liability company, and H20 Mark Marketing, LLC, a Utah limited liability company. (*Id.* at ¶ 2). Bland states that iMoney Tools, LLC's business is in the western portion of the United States and has only limited interactions with the Commonwealth of Pennsylvania. (*Id.* at ¶ 4). The company is not incorporated in Pennsylvania; is not registered to do business in Pennsylvania; does not do business under any other name in Pennsylvania; and does not have any property, employees, representatives, or agents in Pennsylvania. (*Id.* at ¶¶ 5-6). Bland avers that neither he nor the company's principal members have ever spoken to Plaintiff and that the company has never contracted with or transacted any business with Plaintiff. (*Id.* at ¶¶ 7-8).

Defendant Deeble states in his affidavit that he is a resident of Idaho who has never been a citizen or resident of Pennsylvania; has not registered to contract or transact business with the

Pennsylvania Secretary of State; does not own any real property in Pennsylvania; and does not have any representatives, employees, or agents in Pennsylvania. (Docket No. 4-2 at ¶¶ 1-4). Defendant Deeble avers that although he and Plaintiff were formerly associated with ACN, he has never contracted to do business with Plaintiff, either individually or through any business entity. (*Id.* at ¶¶ 5-6, 8). With respect to the recorded telephone call, Defendant Deeble states that he received a threatening voicemail from Plaintiff on December 8, 2016, while he was located in New Jersey. (*Id.* at ¶¶ 9-10). Defendant Deeble states that he returned Plaintiff's call but recorded the conversation because he was concerned by the tone of Plaintiff's voicemail. (*Id.* at ¶ 11). Defendant Deeble avers that he maintains possession of the audio recording and that his primary purpose for recording the call was to protect himself and his family against Plaintiff's threats. (*Id.* at ¶¶ 12, 19). He summarizes the call and attaches a transcription of same to his affidavit. (*Id.* at ¶¶ 11, 13-17; Docket No. 4-3). Defendant Deeble states that Plaintiff informed him that he was in Ohio, not Pennsylvania, and that the telephone call did not include anyone located in Pennsylvania. (Docket No. 4-2 at ¶¶ 15, 18).

III. PROCEDURAL HISTORY

Plaintiff initiated this case by filing his Complaint in the Court of Common Pleas of Allegheny County on December 22, 2016. (Docket No. 1-2). Defendants responded by removing the case to this Court on January 20, 2017. (Docket No. 1). Defendants filed the pending Motion to Dismiss, along with its Brief in Support and supporting evidence on January 24, 2017. (Docket Nos. 3, 4). Plaintiff filed his response in opposition, to which Defendants replied. (Docket Nos. 7, 12, 13). No further briefing has been requested and the matter is now ripe for disposition.

IV. LEGAL STANDARD

Pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, a court may dismiss a complaint for lack of personal jurisdiction. FED. R. CIV. P. 12(b)(2). "Once a defendant challenges a court's exercise of personal jurisdiction over it, the plaintiff bears the burden of establishing personal jurisdiction." *D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 102 (3d Cir. 2009). If an evidentiary hearing is not held, the plaintiff need only establish a prima facie case of personal jurisdiction, and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor."[2] *Id.* (citing *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004))).

In Pennsylvania, courts are authorized to exercise personal jurisdiction over a defendant to the full extent permitted under the Federal Constitution. *See IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 258-59 (3d Cir. 1998); *see also* 42 PA. CONS. STAT. § 5322(b). The Due Process Clause protects defendants from binding judgments of foreign states with which the defendants had no significant "'contacts, ties, or relations.'" *Burger King v. Rudzewicz*, 471 U.S. 462, 471-72 (1985) (quoting *Int'l Shoe v. Wash.*, 326 U.S. 310, 319 (1945)). Due process requires that a

---

[2] The Court notes that it recognizes its authority to order the parties to conduct discovery on contested jurisdictional issues and to hold an evidentiary hearing to permit the parties to present evidence on these issues. Indeed, this Court has ordered both discovery and evidentiary hearings in prior cases where personal jurisdiction has been contested by the parties, *see, e.g.*, *Hufnagel v. Ciamacco*, 281 F.R.D. 238 (W.D. Pa. Mar. 20, 2012); *Rychel v. Yates*, No. 09-CV-1514, 2011 U.S. Dist. LEXIS 38824 (W.D. Pa. Apr. 11, 2011). Here, Plaintiff argues that the Court should schedule a hearing on the issues. (Docket No. 7 at 4). However, because Plaintiff has failed to make a threshold prima facie showing of personal jurisdiction over Defendants, he is not entitled to any jurisdictional discovery or to a jurisdictional hearing. *See, e.g.*, *Fatouros v. Lambrakis*, 627 F. App'x 84, 88 (3d Cir. 2015) (affirming the district court's holding that it lacked personal jurisdiction, where it did not hold an evidentiary hearing, because the plaintiff "did not present a prima facie case that the defendants purposefully availed themselves of conducting activity in New Jersey"); *Eurofins Pharma US Holdings v. BioAlliance Pharma SA*, 623 F.3d 147, 157 (3d Cir. 2010) (holding that "[i]f the plaintiff presents factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts between the party and the forum state, the plaintiff's right to conduct jurisdictional discovery should be sustained") (internal quotations and alterations omitted); *Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*, 107 F.3d 1026, 1042 (3d Cir. 1997) (concluding that "mere unsupported allegation[s] that the defendant 'transacts business' in an area" were "clearly frivolous" and did not warrant discovery).

defendant be provided a "'fair warning'" and a "'degree of predictability'" regarding how its conduct may subject it to legal process and liability in a particular forum. *Id.* (quoting *Shaffer v. Heitner*, 433 U.S. 186, 218 (1977), and *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

Personal jurisdiction may be established in accordance with these Constitutional principles through a showing of general or specific jurisdiction. Only specific jurisdiction is relevant to this matter. "Specific jurisdiction" is "personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984). To establish specific personal jurisdiction, a plaintiff must show that a defendant had fair warning that he or she was subject to legal process in a particular state because the defendant had "minimum contacts" with the state. *Marten v. Godwin*, 499 F.3d 290, 296 (3d Cir. 2007) (citing *Burger King*, 47 U.S. at 472). A court generally determines specific jurisdiction on a claim-by-claim basis. *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 318 n.3 (3d Cir. 2007) (citing *Remick v. Manfredy*, 238 F.3d 248, 255–56 (3d Cir. 2001)). As to contract disputes, the "traditional test" of specific personal jurisdiction is utilized. As such, the plaintiff must demonstrate each of the following:

> First, the defendant must have purposefully directed its activities at the forum. Second, the litigation must arise out of or relate to at least one of those activities. And third, if the prior two requirements are met, a court may consider whether the exercise of jurisdiction otherwise comports with fair play and substantial justice.

*Id.* at 317 (internal quotations, citations, and alterations omitted). In intentional tort cases, specific personal jurisdiction is evaluated under the *Calder* "effects test" which necessitates a plaintiff to prove these factors:

7

> (1) The defendant committed an intentional tort; (2) The plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort; (3) The defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity.

*IMO Indus., Inc.*, 155 F.3d at 265-66 (footnote omitted).

V. DISCUSSION

It is undisputed that Defendant Deeble is a citizen of Idaho and does not have continuous and systematic contacts with Pennsylvania. Plaintiff has also sued an incorrect entity by identifying "Tranont, Inc." as a defendant. However, it is also undisputed that iMoney Tools, LLC d/b/a Tranont is a citizen of Utah and that it does not have continuous and systematic contacts with Pennsylvania. (Docket No. 4-1). Therefore, the Court does not have general jurisdiction over the parties. *See, e.g., Element Fin. Corp. v. ComQi, Inc.*, 52 F. Supp. 3d 739, 745-46 (E.D. Pa. 2014) (in a case where the plaintiff identified the wrong entity as a defendant, the court found that it did not have general jurisdiction over the defendant because the plaintiff "has not shown by competent evidence, actual proofs, or affidavits that we have general jurisdiction, as defendant ComQi has demonstrated that it is not the same business [the plaintiff] contemplates"). The Court now turns to the dispute between the parties to determine whether Plaintiff's alleged claim-specific actions are sufficient for the Court to find that it has specific personal jurisdiction over this case. (*Id.*). In support of its Motion to Dismiss, Defendants contend that Plaintiff has failed to meet his burden to establish a *prima facie* case of specific personal jurisdiction. (Docket Nos. 4, 13). Plaintiff counters that jurisdiction is proper in this Court. (Docket No. 7). As noted above, the Court is required to apply slightly different tests to

analyze whether personal jurisdiction is appropriate over Plaintiff's civil claims and first turns to its evaluation of the breach of contract action.

      *a. Breach of Contract Claims*

In a breach of contract case, the Court "consider[s] the totality of the circumstances, including the location and character of the contract negotiations, the terms of the contract, and the parties' actual course of dealing." *Remick*, 238 F.3d at 256. Merely contracting with a resident of the forum state is not sufficient to confer personal jurisdiction over a nonresident. *See Grand Entm't Group v. Star Media Sales*, 988 F.2d 476, 482 (3d Cir.1993) ("[A] contract alone does not 'automatically establish sufficient minimum contacts in the other party's home forum.'") (quoting *Burger King*, 471 U.S. at 478). However, "[p]arties who 'reach out beyond [their] state and create continuing relationships and obligations with citizens of another state' are subject to the regulations of their activity in that undertaking." *General Elec. Co. v. Deutz AG*, 270 F.3d 144, 150 (3d Cir. 2001) (quoting *Burger King*, 471 U.S. at 473). A defendant need not physically enter the forum -- as communications by email, mail, and telephone may suffice if such contacts through these media amount to deliberate targeting of the forum by the defendant. *O'Connor*, 496 F.3d at 317. But, the "unilateral activit[ies] of those who claim some relationship with a nonresident defendant" and "contacts with a state's citizens that take place outside the state are not purposeful contacts with the state itself." *Id.* (internal quotations and citation omitted). Further,

> [w]here the only contacts an out of state defendant has with the forum state are that it concluded a contract with a forum state plaintiff and sent some related communications to that plaintiff, and where the contract negotiations were initiated by the plaintiff, the contract is to be performed entirely outside the forum state, the contract does not contain a choice-of-law clause designating the

9

> application of forum state law, and the contract does not create long-term or substantial ties with the forum state, the defendant does not have sufficient contacts.

*Hufnagel*, 281 F.R.D. at 246-47 (quoting *Rotondo Weinreich Enters. v. Rock City Mech., Inc.*, No. 04-CV-5285, 2005 U.S. Dist. LEXIS 764, at *18 (E.D. Pa. Jan. 19, 2005)).

Underlying this case is an alleged agreement between the parties pursuant to which they agreed to a covenant not to compete. (Docket No. 1-2 at ¶¶ 44-48). Plaintiff attaches to his Complaint an unsigned copy of the ACN contract and US terms and conditions. (*Id.* at 26-30). The purported contract identifies ACN as a North Carolina limited liability company and states that "[t]his Agreement shall be governed by the laws of the state of North Carolina and the Federal Arbitration Act." (*Id.* at 26, 29). The terms of the alleged contract provide no reference to Pennsylvania law controlling any aspect of the parties' relationship. (*Id.* at 26-30).

Moreover, the unsigned contract, which does not name Plaintiff nor Defendants, is unexecuted and refers to the signee's alleged relationship with non-party ACN. (*Id.*). It appears that the unsigned contract was between Plaintiff and ACN. There is no indication that the purported contract was between Defendant Deeble and/or Defendant Tranont and ACN, and Plaintiff has not attached a contract executed by Defendant Deeble and/or Defendant Tranont and ACN.[3] In addition, the terms of the alleged agreement provide that the signee is "an independent contractor responsible for [his or her] own business and not an agent, legal representative or employee of ACN." (Docket No. 1-2 at 27). Thus, when he was associated with ACN, Plaintiff (as well as Defendants) agreed that he was not an agent of ACN. Further, Plaintiff has not pled the location and character of the contract negotiations. *See Rychel*, 2011

---

[3] To this end, the Court notes that Pennsylvania's state pleading practice provides that when any claim is based upon an agreement or a writing, it must be attached to the pleading. Pa. R. Civ. P. 1019.

U.S. Dist. LEXIS 38824, at *42; *see also Wotring v. Stoughton*, No. 2:15-CV-1710, 2016 U.S. Dist. LEXIS 116576, at *21 (W.D. Pa. Aug. 29, 2016) (finding that negotiating a contract in Pennsylvania was insufficient "to show that the individual defendants purposefully directed any activities at the Commonwealth" and concluding that the litigation did not "arise out of or relate to the non-resident defendant's activities with the forum"). To the extent that Plaintiff has made allegations that Defendants, as non-residents, solicited business from Pennsylvania, they are general, conclusory, and do not meet the pleading standards set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). Hence, the Court finds that personal jurisdiction over Defendants is lacking. *See, e.g.*, *Rychel*, 2011 U.S. Dist. LEXIS 38824, at *46-53; *Thomas v. Vinculum Grp. Ltd.*, No. 15-CV-3194, 2015 U.S. Dist. LEXIS 172143, at *8-10 (D.N.J. Dec. 23, 2015) (finding a lack of personal jurisdiction and holding that "it cannot be said that Defendants purposely availed themselves of the laws of this state such that they could have reasonably foreseen being haled into court in this state" where the defendant was not domiciled in New Jersey and there was no evidence that the defendants engaged in any business of personal dealings with New Jersey); *Santana Prods., Inc. v. Bobrick Washroom Equip., Inc.*, 14 F. Supp. 2d 710, 713-714 (M.D. Pa. 1998) (finding a lack of personal jurisdiction where the plaintiff "failed to identify a *single* occasion when [the defendants] generated a business contact in Pennsylvania") (emphasis in original).

For these reasons and upon consideration of the totality of the facts and circumstances, the Court finds that it lacks personal jurisdiction over Defendants as to the breach of contract claim.

### b. Tortious Claims

As discussed above, specific personal jurisdiction of tortious claims is evaluated under the *Calder* "effects test" which necessitates a plaintiff to prove that: (1) the defendant committed an intentional tort; (2) the plaintiff felt the brunt of the harm in the forum; and (3) the defendant expressly aimed his tortious conduct at the forum. *IMO Indus., Inc.*, 155 F.3d at 265-66. The Third Circuit has recognized, however, that *Calder* did not "carve out a special intentional torts exception to the traditional specific jurisdiction analysis, so that a plaintiff could always sue in his or her home state." *Id.* at 265. Rather, "the unique relations among the defendant, the forum, the intentional tort, and the plaintiff may under certain circumstances render the defendant's contacts with the forum—which otherwise would not satisfy the requirements of due process—sufficient." *Id.* "[T]he *Calder* 'effects test' can only be satisfied if the plaintiff can point to contacts which demonstrate that the defendant *expressly aimed* its tortious conduct at the forum, and thereby made the forum the focal point of the tortious activity." *Id.* (emphasis in original).

Here, Plaintiff has not satisfied the *Calder* effects test. He does not set out facts to show that Defendants aimed tortious conduct towards the state with the "intentionality" that is required for specific jurisdiction. *Marten*, 499 F.3d at 297. Indeed, none of the parties were located in Pennsylvania when the telephone call was recorded, as Defendant Deeble was located in New Jersey, while Plaintiff was located in Ohio. (Docket No. 4-2 at ¶¶ 9, 15, 18). Plaintiff does not allege that any alleged tortious conduct took place in Pennsylvania or that the call was published in Pennsylvania. (Docket No. 1-2). The only connection to Pennsylvania is Plaintiff's residence. (*See id.*). It is well settled that the "mere allegation that the plaintiff feels the effect of the defendant's tortious conduct in the forum because the plaintiff is located there is insufficient to

satisfy *Calder*." *IMO Indus.*, 155 F.3d at 263; *see also Rychel*, 2011 U.S. Dist. LEXIS 38824, at *45 ("[T]o establish that a defendant 'expressly aimed' his conduct, the plaintiff has to demonstrate 'the defendant knew that the plaintiff would suffer the brunt of the harm caused by the tortious conduct in the forum, and point to specific activity indicating that the defendant expressly aimed his tortious conduct at the forum.'") (quoting *Marten*, 499 F.3d at 297-98). *Cf. Gehling v. St. George's Sch. of Med., Ltd.*, 773 F.2d 539, 544 (3d Cir. Pa. 1985) ("[T]he cause of action arises from defendants' in-state activities, and the defendants' misrepresentation, which occurred and caused injury in Pennsylvania to Pennsylvania residents."). Certainly, there is no evidence presently before this Court that Defendants expressly aimed their alleged tortious activities at this forum. Following the applicable precedent, it is clear to this Court that Pennsylvania cannot be the focal point of the claimed tortious activity, *see Rychel*, 2011 U.S. Dist. LEXIS 38824, at *54-55, and the Court holds that Plaintiff has failed to meet his burden to establish specific personal jurisdiction over Defendants for his tort claims.

As a final matter, the Court notes that New Jersey, Ohio, and Idaho permit telephone calls to be recorded provided that one party to the conversation consents to the recording. *See* N.J. STAT. §§ 2A:156A-3; 2A:156A-4(d); OHIO REV. CODE ANN. §§ 2933.51, 2933.52(B)(4); IDAHO CODE ANN. § 18-6702(2)(d). Thus, given the factual circumstances surrounding the recorded call, Defendants' interception of the call may not be illegal.

### c. *Vacation of Prior Order*

Given that the Court lacks jurisdiction over this matter, it must also vacate the Court of Common Pleas of Allegheny County's injunctive order against Defendants.[4] *See, e.g., United*

---

[4] Additionally, the Court notes that the docket entry report in the Court of Common Pleas of Allegheny County reflects that Plaintiff did not serve his affidavit of service of the emergency petition upon Defendants until January

*States v. Rice*, 176 F.2d 373, 376 (3d Cir. 1949) ("Since there was no jurisdiction to enter that order it may be set aside at any time and we will effect that result sua sponte."); *see also United States v. Magnan*, 622 F. App'x 719, 723 (10th Cir. 2015) (explaining that where the district court lacked jurisdiction, its previous order "was a nullity" and holding that "[b]y the same token, because the state court lacked jurisdiction to order [the defendant] to enter a plea, it follows that the plea itself is a nullity"); *In re Establishment Inspection of Hern Iron Works*, 881 F.2d 722, 726-27 (9th Cir. 1989) (stating that any court order issued without jurisdiction is a nullity or "nothing at all").[5]

### d. Conclusion/Transfer

Because this Court lacks personal jurisdiction over Defendants, the question remains whether the Court should dismiss this action or transfer it to an appropriate District Court pursuant to 28 U.S.C. § 1631. *See Gehling,* 773 F.2d at 544 (stating that a district court lacking personal jurisdiction can transfer a case to a district in which the case could have originally been brought). Section 1631 provides, in pertinent part:

> Whenever a civil action is filed in a court . . . and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed . . . and the action . . . shall proceed as if it has been filed in . . . the court to which it is transferred on the date upon which it was actually filed in . . . the court from which it is transferred.

28 U.S.C. § 1631.

---

11, 2017, fourteen days after the court made the injunction permanent. *See Maser v. Deeble et al.*, GD 16-024467, at Docket No. 8 (Jan. 11, 2017).

[5] Given that the Court has determined that Pennsylvania is not the appropriate jurisdiction for this matter, it also concludes that it does not have jurisdiction over Plaintiff's claim against Defendants for their alleged violation of Pennsylvania's Unfair Trade Practices and Consumer Protection law. (*See* Docket No. 1-2 at ¶¶ 64-71).

In this Court's opinion, given the circumstances of this case detailed above, the interests of justice are better served if this case is dismissed. Because the Court's finding is not an adjudication on the merits, the Court's dismissal is without prejudice. Plaintiff is entitled to refile his claims against Defendants in the appropriate jurisdiction. *See* FED R. CIV. P. 41(b) (providing that dismissals for lack jurisdiction, improper venue, or failure to join a party do not operate as adjudications on the merits unless explicitly stated); *see also Compagnie Des Bauxites de Guinee v. L'Union Atlantique S.A. D'Assurances*, 723 F.2d 357, 360 (3d Cir. 1983) (holding that because "a dismissal for want of in personam jurisdiction is not a judgment on the merits of the cause of action itself," the plaintiff "was entitled to file a second suit on the same cause of action"); *Stella Maris Ins. Co. v. Catholic Health East*, No. 10-CV-1946, 2010 U.S. Dist. LEXIS 93969, at *21 (E.D. Pa. Sept. 8, 2010) (dismissing the plaintiff's complaint without prejudice and explaining that the plaintiff could refile its action in the appropriate jurisdiction).[6]

---

[6] The Court notes that it questions whether this action is barred by Paragraph 17 of the alleged contract, mandating arbitration, and by Paragraph 12 of the alleged contract, which provides:

> IN NO EVENT WILL ACN, ANY OTHER ACN COMPANY OR ANY OTHER ACN PROVIDER BE LIABLE FOR ANY INDIRECT, CONSEQUENTIAL, SEPCIAL, PUNITIVE, OR INCIDENTAL DAMAGES (INCLUDING DAMAGES FOR LOSS OF BUSINESS PROFITS, BUSINESS INTERRUPTION, AND THE LIKE), ARISING OUT OF ANY CAUSE, INCLUDING BUT NOT LIMITED TO, BREACH OF WARRANTY OR THE DELAY, ACT, ERROR OR OMISSION OF ACN, ANY ACN COMPANY OR ANY ACN PROVIDER, OR THE DELIVERY, NONDELIVERY, DISCONTINUATION, OR MODIFICATION OF ANY PRODUCT OR SERVICE BY ACN, ANY ACN COMPANY, OR ANY ACN PROVIDER, EVEN IF ACN HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

(Docket No. 1-2 at 28-29).

VI.     CONCLUSION

Based on the foregoing, Defendants' Motion to Dismiss [3] is granted without prejudice to Plaintiff refiling this action in the appropriate jurisdiction.  An appropriate Order follows.

*s/Nora Barry Fischer*
Nora Barry Fischer
United States District Judge

Date:   March 9, 2017

cc/ecf: All counsel of record.